UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLEE GOULETTE,

        Plaintiff,                      Civil Action No.
                                            08-CV-12459

vs.

                                            PAUL D. BORMAN
PORT HURON HOSPITAL,                UNITED STATES DISTRICT JUDGE

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT and DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This case is brought under the Family Medical Leave Act ("FMLA"). Plaintiff Kimberlee Goulette, a respiratory therapist still employed by Defendant Port Huron Hospital, alleges that her FMLA rights were violated in August 2006 when Defendant denied her request for intermittent FMLA leave based on a diagnosis of fibromyalgia. At the onset, the Court notes that while the parties discuss in their papers purported FMLA violations occurring after August 2006, the Complaint in this case alleges only that Plaintiff's FMLA rights were violated as a result of the denial of her August 2006 request for FMLA leave. Any purported FMLA violations occurring after August 2006 are not part of this action and, accordingly, the Court will not address them.

Now before the Court are the parties' cross motions for summary judgment. Both motions have been fully briefed and the Court heard oral argument on October 7, 2009. Thereafter, the parties requested that the Court not issue an immediate opinion but instead try to facilitate a

1

settlement. The Court met with the parties; no settlement occurred. The Court now proceeds with an opinion. For the reasons that follow, Plaintiff's Motion for Summary Judgment will be denied; Defendant's Motion for Summary Judgment will be granted.

## II. BACKGROUND[1]

### A.

Plaintiff has been employed by Defendant as a respiratory therapist since 2004. Pl. Dep. at 51. Plaintiff's position required her to work four days per week, three eight-hour days and one twelve-hour day. *Id*. at 54. Plaintiff "was hired for this particular schedule." *Id*. at 65.

### B.

On April 30, 2006, Plaintiff requested a change in her work schedule from four days per week to three days per week because, as stated by Plaintiff, "I am finding it increasingly difficult to take care of all my personal business working 4 days per week." Def.'s Ex. 2. This request did not mention any medical concerns. Respiratory Therapy Manager Chris Babcock, who is responsible for scheduling, told Plaintiff that her request could not be accommodated at that time because "[t]here was no positions open." Babcock Dep. at 13. Babcock told Plaintiff that she would keep the request to work a three-day workweek "in mind just like [she] would of any employee and we'll do it as soon as we can." *Id*.

### C.

On July 25, 2006, Plaintiff was diagnosed by Dr. Susan J. Van Dellen, D.O. with, among other things, (1) fibromyalgia, (2) arthralgia, and (3) migraine headaches. Def.'s Ex. 4. As a result, Plaintiff missed work from July 31, 2006, to August 3, 2006. Pl. Dep. at 83. According to Plaintiff,

---

[1] The background is gleaned from the evidence attached to the parties' papers.

she "couldn't walk." *Id*. Upon her return to work on August 3, Plaintiff presented a doctor's note to Babcock stating: "[Patient] to be off work 7/31/06 –> 8/2/06 return to work 8/5/06." Def.'s Ex. 5. The note did not give a specific medical reason for the absence.

Babcock told Plaintiff to see Kathy Napolitan, Defendant's Employee Heath Coordinator. Babcock Dep. at 14; Pl. Dep. at 84. After discussing the matter with Napolitan, Plaintiff filled out a Leave of Absence Request form, *see* Def.'s Ex. 6, in which she requested intermittent medical leave for an "indefinite" period of time beginning on August 1, 2006. Pl. Dep. at 85.

Napolitan gave Plaintiff a medical certification form for her doctor to fill out. *Id*. Plaintiff returned the completed form, which is dated August 9, 2006. The certification form reflects that Plaintiff was suffering from a serious health condition based on three separate diagnoses: (1) fibromyalgia, (2) left trochanteric bursitis, and (3) migraine headaches. Def.'s Ex. 7. The form also indicates that Plaintiff, at the time, was "currently not incapacitated" from fibromyalgia and that she "should only need 7 working days off per year for fibromyalgia flares." *Id*.

Because Plaintiff's medical certification form contained three separate diagnoses, Napolitan contacted Defendant's medical director, Dr. Thabit Bahhur, for assistance in handling Plaintiff's FMLA leave request. As stated by Napolitan, "[o]ne of the things that I have to do if I get something that is different – and this was a different request – I have a medical director who I operate under his authority. And so I contacted the medical director regarding the multiple diagnoses on the form." Napolitan Dep. at 14-15. Napolitan showed the form to Dr. Bahhur, who then "reviewed the medical form to help [Napolitan] determine if the[] [diagnoses] met the definitions of serious chronic health condition given under FMLA law." *Id*. at 15. Dr. Bahhur advised Napolitan that, in his opinion, neither fibromyalgia nor bursitis constituted a "serious

3

medical condition" under the FMLA but that migraine headaches did. *Id*. at 16.

Dr. Bahhur testified that he attempted to contact Plaintiff's doctor, Dr. Van Dellen, on two separate occasions in order to seek clarification regarding Plaintiff's medical certification form. Bahhur Dep. at 15. Dr. Bahhur could not recall the dates on which he called, although he testified that it was "shortly after" August 9, 2006, the date on which Dr. Van Dellen signed the medical certification form. *Id*. at 15-16. Dr. Bahhur left messages for Dr. Van Dellen but the two were never able to connect. *Id*. at 15. Although Dr. Bahhur never received a message that Dr. Van Dellen had returned his calls, Dr. Bahhur testified that he does not "know for sure" whether Dr. Van Dellen attempted to return his calls and that, due to the chaotic nature of his schedule, Dr. Van Dellen may have tried to return the call without being able to get through to him. *Id*. at 16, 25.

Via letter dated August 15, 2006, Defendant granted Plaintiff's request for intermittent FMLA leave based on her diagnosis of migraine headaches, but denied the request as to her fibromyalgia diagnosis. Def.'s Ex. 10. Thus, Defendant did grant Plaintiff's request for intermittent FMLA leave, albeit for a different one of the three diagnoses listed by Plaintiff's doctor in Defendant's medical certification form: fibromyalgia, left trochanteric bursitis, and migraine headaches. Defendant's letter states that "[a]t this time Fibromyalgia is not recognized as a *serious chronic medical condition* under the Family Medical Leave Act" and that "[Defendant] has not allowed for Intermittent leave under FMLA for Fibromyalgia." *Id*. (emphasis in original). Defendant did grant Plaintiff's request for FMLA leave based on Plaintiff's doctor's diagnosis of migraine headaches. The bottom line is that Plaintiff requested FMLA leave in August 2006, and was granted FMLA leave. Thereafter, Plaintiff never sent a subsequent request to Defendant for FMLA leave.

On August 22, 2006, Plaintiff sent a letter to Defendant stating:

> Today I consulted the US Department of Labor regarding your letter to me dated August 15, 2006. I was told that Port Huron Hospital can't determine whether my condition meets the criteria of a serious health condition. According to the Americans With Disabilities Act, any physical or mental impairment that limits ones abilities to perform daily functions is considered a serious medical condition.

Def.'s Ex. 11.

**D.**

On September 19, 2006, Plaintiff sent Babcock a letter in which she requested "to drop to part time status of 24 hours weekly as soon as possible." Def.'s Ex. 13. Plaintiff's letter to Babcock contains no indication that her request for a schedule change was based on, or motivated in any way by medical issues. Babcock was unable to accommodate Plaintiff's request for a part-time schedule because "there wasn't another position available to begin to make it happen." Babcock Dep. at 31. Plaintiff was offered a "casual" position, "which is where you can pick up time as we have it"; Plaintiff refused the offer. *Id.* at 26.

**E.**

On October 23, 2006, a day on which Plaintiff was scheduled to work, Plaintiff submitted a doctor's note stating: "[Patient] should be on 3 – 8 hr shifts per week. She does not need to be off on medical leave." Def.'s Ex. 15. Upon receiving that note, Napolitan told Plaintiff to leave work and go home until the matter could be resolved. When asked why she sent Plaintiff home, Napolitan testified that:

> That's the normal procedure when someone brings in a slip with – a physician's slip saying there has to be some change in their schedule. I can't determine whether that can be done when they're standing there in my office. So they are sent home if it restricts their ability to do their job, and then an investigation between, you know – is done to see what can be done about

5

whatever that is.

Napolitan Dep. at 34.

> if her physician says she cannot do her job for a medical reason, I cannot allow her to do her job until we clarify all of the parts of that. And so we usually – and usually the employee will go on a medical leave, since this is a medical situation, and they receive, you know, short-term disability pay and all those things until we get it figured out, and it's usually not a lengthy process.

In subsequent conversations, Napolitan explained to Plaintiff that

*Id*. at 36-37.

Also, on October 23, 2006, the same date on which Plaintiff submitted her doctor's note, Napolitan sent Dr. Van Dellen a letter asking for clarification regarding the "three, eight-hour shift per week" restriction. Def.'s Ex. 16. Someone from Dr. Van Dellen's office telephoned Napolitan in response to the October 23, 2006, letter, stating that the restriction was necessitated by Plaintiff's fibromyalgia diagnosis. Napolitan Dep. at 19-20.

On October 24, 2006, Plaintiff sent Napolitan a letter stating, in pertinent part: "I am not filling out this [medical leave of absence] form, since I am not requesting a leave of absence from my job duties . . . . I was and still am able to work. I am being prevented from earning a lively hood [sic] for reasons I don't understand." Def.'s Ex. 19. The bottom line is that, at this time, Plaintiff was not requesting an FMLA leave.

Plaintiff was placed on an "administrative leave of absence" "to keep her employed as [the Hospital] tried to work through and resolve the situation." Seidl Dep. at 23, 50.[2]

In a letter dated November 8, 2006, Napolitan wrote to Plaintiff that Defendant did not have

---

[2] Doris Seidl is Defendant's Director of Human Resources.

6

an open twenty-four hour per week position available and that it therefore could not grant Plaintiff's request for a permanent reduction in hours. Def.'s Ex. 17. The last paragraph of the letter asks Plaintiff to call "when you receive this letter and let me know if you have reconsidered and wish to request a medical leave." *Id*.

On December 4, 2006, Napolitan sent another letter to Plaintiff. Def.'s Ex. 18. This letter, among other things, advises Plaintiff that her job "cannot be held open . . . if you do not accept medical leave or return to work." Def.'s Ex. 18. Napolitan further wrote: "If you are able to work your full scheduled hours, you should let me know and arrangements will be made for your return to work. If you wish to have FMLA or medical leave, please let me know and a leave will be granted provisionally." *Id*. Again, Plaintiff did not request an FMLA leave.

## F.

Plaintiff filed a complaint with the United States Department of Labor ("DOL") while she was on administrative leave, alleging that Defendant had violated her FMLA rights. *See* Def.'s Ex. 22. Plaintiff also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant had violated her rights under the Americans with Disabilities Act ("ADA"). *See id.* On December 21, 2006, Plaintiff received a letter from the EEOC stating that "[i]t appears you are not a qualified individual with a disability under the [ADA]." Def.'s Ex. 23. Meanwhile, the Department of Labor continued negotiations with Defendant, on Plaintiff's behalf, with regard to Plaintiff's complaint charging an FMLA violation. Def.'s Ex. 24.

## G.

The parties eventually worked out a compromise and, on January 24, 2007, Babcock sent Plaintiff a letter advising that the Hospital could now accommodate Plaintiff's request for a 24-hour

7

work week:

> Several months ago you requested a 24 hour per week position.
>
> At this time I am pleased that I am able to offer you this opportunity. Effectively immediately, you can begin this 24 hour per week position.

Def.'s Ex. 25. As stated by Defendant:

> The Hospital ultimately offered, and Plaintiff accepted, the following compromise: Plaintiff was to be placed in the 24-hour, part-time position that she desired; she was to be granted 4.7 weeks of FMLA leave during the 14-week period of administrative leave; and she was to pay back only a fraction of the $3000+ she owed to the Hospital for paying her share of health insurance premiums and other benefits during the administrative leave period.

Much of this compromise is memorialized in a letter sent by Seidl to Plaintiff on February 8, 2007. *See* Def.'s Ex. 27. Plaintiff returned to work on January 30, 2007, pursuant to the compromise, and the Department of Labor and EEOC closed their respective investigations. Def.'s Ex. 26.

### H.

Plaintiff filed the present action in St. Clair County Circuit Court on May 5, 2008. The case was timely removed to this Court. In her single count Complaint, Plaintiff alleges that Defendant violated the FMLA when it denied her request for intermittent FMLA leave in August 2006 "with respect to her diagnosis of fibromyalgia." Compl. at ¶ 18, p. 4. Plaintiff seeks damages for loss of past and future earnings and benefits.[3] Plaintiff also seeks attorney fees and liquidated damages.

### III. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(b), a party against whom a claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all

---

[3] Plaintiff does not specify in her Complaint the period of time for which she is claiming these damages.

or any part thereof." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-323. The non-moving party may not rest upon the mere allegations or

9

denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).

## IV. ANALYSIS

### A. Preliminary Statement Regarding the Scope of the Complaint

The sole question presented in this lawsuit is whether the August 15, 2006, grant to Plaintiff of FMLA leave for migraine headaches, one of her doctor's diagnoses, but not for fibromyalgia, another one of her doctor's diagnoses, constituted an FMLA violation. As the Court noted in the first paragraph of this Opinion and Order, the parties discuss, in their briefs, whether events occurring after August 2006 violated the FMLA. For example, a portion of the parties' briefs are dedicated to the issue of whether Defendant violated the FMLA with regard to requests for leave and/or scheduling changes made by Plaintiff in September and October 2006.[4] However, the Complaint does not so much as mention any events occurring after August 2006. At no time in the Complaint does Plaintiff allege that Defendant violated the FMLA with regard to conduct and/or events occurring at any time other than in August 2006. Thus, while the parties discuss whether Defendant committed separate FMLA violations after August 2006, any such violations, if they occurred, are not part of this action because they were not pled.

### B. The Parties' Arguments

Defendant advances two main arguments in support of its position that it did not violate

---

[4] These requests are discussed in Section II(D) and (E), above.

Plaintiff's FMLA rights in August 2006. First, Defendant contends that Plaintiff's FMLA claim is barred by Plaintiff's purported acceptance of the "settlement" negotiated on her behalf by the DOL. Second, and alternatively, Defendant argues that it did not violate the FMLA as a matter of law. Plaintiff has taken the opposite position with regard to both of Defendant's arguments.

## C. Law

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

> [A]ny eligible employee who takes leave . . . for the intended purpose of the leave shall be entitled, on return from such leave–(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1). "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The Act makes it unlawful for a covered employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" a right under the FMLA. 29 U.S.C. § 2615(a)(1). "Under the entitlement theory (which some courts refer to as the interference theory), '[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA–for example, a twelve-week leave or reinstatement after taking a medical leave.'" *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (quoting *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)). As stated by the Sixth Circuit,

> [t]o prevail on an entitlement claim, an employee must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined

11

under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Id*.

Three types of leave are available to employees dealing with a serious health condition: (1) one block of leave of 12 weeks or fewer; (2) intermittent leave taken in separate periods of time due to a single illness or injury, and which may include leave periods from an hour or more to several weeks; and (3) a reduced leave schedule pursuant to which the employer reduces the employee's normal work hours, usually to a part-time basis.

*Coker v. McFaul*, 247 F. App'x 609, 615-616 (6th Cir. 2007) (unpublished).

The present case involves a request for "intermittent leave." "Intermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202(a). This concept has been succinctly explained by the Sixth Circuit as follows:

When an employee has a chronic health condition for which intermittent FMLA leave has been approved, the leave commences upon the occurrence of the first absence caused by that condition, and it extends to cover every other absence caused by that condition during the same twelve-month FMLA period. In other words, each absence subsequent to the first absence is not treated as a separate period of FMLA leave with its own commencement date.

*Davis v. Mich. Bell Tel. Co.*, 543 F.3d 345, 350 (6th Cir. 2008). According to the regulations,

[f]or intermittent leave . . . taken because of one's own serious health condition, . . . there must be a medical need for leave and it must be that such medical need can be best accommodated through an intermittent . . . schedule . . . . Leave may be taken intermittently . . . when medically necessary for planned and/or unanticipated medical treatment of a serious health condition.

29 C.F.R. § 825.202(b). Moreover,

(1) Intermittent leave may be taken for . . . the employee's own serious health condition . . . and may include leave of periods from an hour or more to several weeks. Examples of intermittent leave would include leave taken on an occasional basis for medical appointments, or leave taken several days at

>a time spread over a period of six months, such as for chemotherapy. A pregnant employee may take leave intermittently for prenatal examinations or for her own condition, such as for periods of severe morning sickness.
>
>(2) Intermittent . . . leave may be taken for absences where the employee . . . is incapacitated or unable to perform the essential functions of the position because of a chronic serious health condition or a serious injury.

*Id.*

### D. Discussion

In August 2006, Plaintiff was seeking an intermittent medical leave based on her three submitted medical diagnoses, one of which was fibromyalgia, and another of which was migraine headaches. That request was granted by Defendant with respect to Plaintiff's migraine headache diagnosis. It was denied as to Plaintiff's submitted fibromyalgia diagnosis. Because Plaintiff's request for FMLA leave was granted as to one of three diagnoses, her absence from work immediately prior to her August 2006 request for FMLA leave (from July 31, 2006, until August 3, 2006) was covered by the FMLA.

Thereafter, Plaintiff never again requested a medical leave. Rather, Plaintiff requested a permanent change in her schedule. In fact, on September 19, 2006, Plaintiff sent Babcock a letter requesting "to drop to part time status of 24 hours weekly as soon as possible." Def.'s Ex. 13. The letter does not indicate that her request for a schedule change was based on, or motivated in any way by medical issues. Moreover, on October 24, 2006, Plaintiff sent Napolitan a letter in which she explicitly refused to fill out medical-related forms, stating, in pertinent part: "I am not filling out this [medical leave of absence] form, since I am not requesting a leave of absence from my job duties." Def.'s Ex. 19. In order to sustain an interference claim under the FMLA, Plaintiff must show, among other things, that she was "denied . . . FMLA benefits to which she was entitled." *Edgar*,

443 F.3d at 507. Plaintiff was granted FMLA leave for her absence from July 31, 2006, until August 3, 2006, and thereafter, never again requested a medical leave. Under these circumstances, Plaintiff cannot show that she was "denied . . . FMLA benefits to which she was entitled."[5] Accordingly, summary judgment in favor of Defendant is proper.

## V. CONCLUSION

Plaintiff sought FMLA leave from Defendant proffering her doctor's report listing three medical diagnoses, one of which was fibromyalgia, another of which was migraine headaches.

Defendant granted Plaintiffs request for FMLA leave for migraine headaches. Defendant refused Plaintiff's request for FMLA leave for fibromyalgia.

Thereafter, Plaintiff never requested FMLA leave from Defendant. Defendant has accommodated Plaintiff's request for a three day, eight hour a day position. Plaintiff continues in that position as of today.

Bottom line: Plaintiff received her requested FMLA leave for one of the multiple diagnoses submitted by her physician. No harm; no foul. *De minimus non curat lex*.

## VI. ORDER

---

[5] Additionally, the Court notes that the medical certification form submitted by Plaintiff, which was completed by Dr. Van Dellen, was "confusing" and "self-contradictory" inasmuch as it contained three separate diagnoses and stated that Plaintiff was not then incapacitated by fibromyalgia. Def.'s Ex. 7. The form also reflects that a "regimen of continuing treatment" was required and that the regimen would include: (1) "prescription drugs," (2) "physical therapy periodically," and (3) office visits. *Id*. It is not clear whether this regimen was necessitated by the fibromyalgia diagnosis, by the other two diagnoses listed on the form, or by some combination of the three.

For the reasons stated above,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment [docket entry 11] is denied.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgement [docket entry 12] is granted.

S/Paul D. Borman<br>
PAUL D. BORMAN<br>
UNITED STATES DISTRICT JUDGE

Dated:  March 3, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 3, 2010.

S/Denise Goodine<br>
Case Manager